IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| JENNIFER R. SHEETS,<br><br>Plaintiff,<br><br>vs.<br><br>OS RESTAURANT SERVICES, INC., dba OUTBACK STEAKHOUSE,<br><br>Defendant | **MEMORANDUM OPINION & ORDER**<br><br>Case No. 1:04-CV-105<br><br>Judge Dee Benson |

## INTRODUCTION

Plaintiff Jennifer Sheets ("Sheets") alleges two employment-based claims against defendant Outback Steakhouse ("Outback"): (1) pregnancy discrimination under Title VII; and (2) constructive discharge. Before the Court is Outback's Motion for Summary Judgment. Having considered the parties' arguments, briefs, and the relevant law, Outback's motion is GRANTED for the reasons set forth below.

## BACKGROUND

This case stems from Sheets' employment as a part-time bartender/server at the Outback Steakhouse in Layton, Utah. Sheets began working at Outback in March, 1996, as a server and bartender. Bartenders and servers at Outback are paid an hourly wage of $2.13, plus tips.

The duties of bartenders and servers are essentially the same -- bartenders serve drinks and food in the bar area, while servers serve drinks and food to customers at tables. In addition to serving drinks and food in the bar area, bartenders also make drinks, order and pick up liquor, and are responsible for accurately collecting, dividing, and accounting for the tips of other

bartenders.

During Sheets' tenure at Outback, she was pregnant on two prior occasions without incident. According to Sheets, on May 3, 2001, when she was five months pregnant with her third child, assistant manager Leala Conners told Sheets that "she thought I was being moved out of the bar." The next day, Sheets submitted her resignation to manager Jim Combe ("Combe"). Sheets' written letter stated: "[i]n light of the situation I have been advised that it would be in my best interest to give my 2 week notice. May 17, 2001, will be my last day."

Sheets asked Combe why he was planning to remove her from the bar the day she submitted her resignation. Combe allegedly told her that he thought she was having a hard time because she was pregnant and could not lift heavy items. He also stated that he thought serving would be easier. Sheets stated that she was not having any difficulties bartending, and she thought serving was more difficult due to lifting heavy trays.

On May 7, 2001, Connors told Sheets that Combe was "just taking you out of the bar because he thinks it will be easier on you because you are pregnant." Sheets resignation announcement was never retracted and there was never any change in management's apparent intention to change Sheets' job from bartender to server. At the end of her 2-weeks notice period, Sheets finished her employment at Outback as a bartender. She was never actually moved to a server position. Sheets initiated this lawsuit against Outback on July 29, 2004.

## DISCUSSION

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

2

of law." Fed.R.Civ.P. 56(c). In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991). The moving party need not negate the nonmoving party's claims, but need only point out that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For purposes of this motion, the Court construes all facts and reasonable inferences in the light most favorable to plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

### **Pregnancy Discrimination under Title VII**

Sheets' first claim against Outback is pregnancy discrimination in violation of Title VII. To establish a prima facie case of pregnancy discrimination under Title VII, Sheets must show that she "suffered an adverse employment action." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). "Although the Tenth Circuit liberally defines an adverse employment action, its existence is determined on a case by case basis and does not extend to a mere inconvenience or an alteration of job responsibilities." *Id.* at 1212-13 (quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000)) (internal quotation marks omitted).

After viewing the evidence and drawing all inferences in the light most favorable to Sheets, the Court finds that there is an insufficient factual basis to support Sheets' claim that she suffered an adverse employment action. First, and most fundamentally, because Sheets submitted her resignation before any employment change occurred, it is unquestioned that she

suffered no employment action at all. Sheets submitted her resignation to Combe the day after the assistant manager told her that "she thought I was being moved out of the bar." Even assuming Combe told Sheets that he thought she was having a hard time because she was pregnant and he thought serving would be easier, Sheets did not *suffer* an adverse employment action because she finished her employment at Outback as a bartender and was never moved to a server position. In this sense, Sheets never suffered even "mere inconvenience" and certainly no "alteration of job responsibilities." *See Wells*, 325 F.3d at 1212. Courts have held that an anticipated change is not sufficient, *see Consor v. Occidental Life Ins. Co. of California*, 469 F. Supp. 1110, 1114-15 (N.D. Texas 1979), for the practical reason that anticipated changes do not always occur.

However, even assuming the anticipated transfer to the server position had taken place, Sheets still fails to establish an adverse employment action because she presents insufficient evidence that the change was materially or significantly adverse to her job status. To establish an adverse employment action, "the employer's conduct must be materially adverse to the employee's job status," which means the conduct must constitute "a significant change in employment status, such as . . . firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 1213 (internal quotation marks omitted). Accordingly, a lateral transfer or reassignment of essentially similar job duties is not an adverse employment action. *Id.*

Sheets claims that a transfer from a bartending position to a server position would be an adverse employment action because as a server she would earn less money and have significantly

4

fewer responsibilities than as a bartender. However, she fails to present evidence to support either proposition.

As for the pay at Outback, the undisputed evidence shows that bartenders and servers are paid the same hourly wage: $2.13, plus tips. Outback has painstakingly reviewed the payroll records of Sheets and servers to calculate and compare their average hourly compensation, including tips. The payroll records demonstrate that Sheets made less money on an average hourly basis than the average hourly pay of servers. Sheets attempts to defeat this evidence by claiming that the payroll records are inaccurate because bartenders do not fully declare their tips. This attempt fails because Sheets has produced no evidence – not even her own affidavit – to support her claim.[1]

As for Sheets' argument that a transfer to a serving position would be a demotion because bartenders have more responsibilities than servers, the record demonstrates that the duties of bartenders and servers are essentially the same – bartenders serve drinks and food in the bar area, while servers serve drinks and food to customers at tables. Sheets contends that because bartenders have additional responsibilities – including making drinks, ordering liquor, picking up liquor at a store, accurately collecting, dividing, and accounting for tips of other bartenders – a transfer to a serving position would be a demotion. However, an adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote,

---

[1] Sheets attempts to corroborate her claim with the affidavit of Debbye Hanner, who was also employed at Outback as a server/bartender. Hanner states, "[b]ased on my observation and experience, bartenders at Outback consistently made more money in tips than servers." This bare assertion is not adequate evidence to dispute the payroll records proffered by Outback. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (plaintiff must set forth specific facts showing that there is a genuine issue for trial).

reassignment with *significantly* different responsibilities . . . ." *Id.* Because a server's duties at Outback are not significantly different from a bartender's duties, such a transfer would be a mere lateral transfer, not an adverse employment action.

Sheets attempts to find support from *Gnadt v. Castro*, 1996 U.S. App. LEXIS 4371 (4th Cir. 1996), where the court held that the plaintiff's transfer from a bartender to a server position was a demotion, and therefore, an adverse employment action. However, *Castro* is distinguishable from the instant case in two important respects. First, the plaintiff in *Castro* was actually transferred to the server position, whereas in the instant case, the undisputed facts establish that Sheets was never actually transferred to a server position. Secondly and more importantly, in *Castro*, the court relied heavily on the fact that the plaintiff's wage was reduced from $4.50 per hour to $2.01 per hour. Sheets would have received the same hourly wage – $2.13, plus tips – in a server position as she had as a bartender.

For the foregoing reasons, the Court finds that Sheets has failed to produce any evidence from which a reasonable inference could be drawn that she suffered an adverse employment action.

### Constructive Discharge

For the reasons stated above, the Court also finds that Sheets' claim for constructive discharge is without merit. "A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Exum v. United States Olympic Committee*, 389 F.3d 1130, 1135 (10th Cir. 2004) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) (further citation omitted)). The court's inquiry "is not whether working conditions at the

6

facility were difficult or unpleasant." *Id.* Rather, "[w]orking conditions must be so severe that the plaintiff simply had no choice but to quit." *Id.* (citing *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000) (additional citation omitted)).

Sheets asserts that she was constructively discharged because Outback was planning to transfer her to a serving position. As explained above, Sheets has failed to present evidence to support her argument that such a transfer could constitute an adverse employment action. It follows that it could hardly be expected to qualify as grounds for a constructive discharge. Under any version of Sheets' facts, such an anticipated move does not constitute working conditions "so intolerable that [she] would have had no other choice but to quit." *Id.* Accordingly, Sheets has failed to produce any evidence from which a reasonable inference could be drawn that she was constructively discharged.

## CONCLUSION

After viewing the evidence and drawing all reasonable inferences in the light most favorable to Sheets, the Court finds that Sheets has failed to support her claims of discrimination with sufficient evidence. Accordingly, Outback's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

DATED this 7th day of June, 2005.

Dee Benson
United States District Judge